**Yi Quan CHEN, Petitioner,**

v.

**IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.**

No. 00–70478.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 10, 2001

Filed Sept. 11, 2001

Jonathan M. Volyn and David Young, Legal Interns, and Maureen E. Laflin and Monica Schurtman, Supervising Attorneys, University of Idaho College of Law, Legal Aid Clinic, Moscow, Idaho, for the petitioner.

John J. Andre, Senior Litigation Counsel, United States Department of Justice, Civil Division, Washington, D.C., for the respondent.

Before: LAY,[1] TROTT and BERZON, Circuit Judges.

LAY, Circuit Judge:

This is an appeal from denial by the Board of Immigration Appeals ("BIA") of a Chinese citizen's application for asylum and withholding of removal pursuant to § 208(a) and § 241(b)(3) of the Immigration and Nationality Act ("I.N.A."), 8 U.S.C. §§ 1158(a), 1231(b)(3). We reverse and find the Petitioner is eligible for a discretionary grant of asylum, as well as a mandatory grant of withholding of removal.

## I. Facts

Yi Quan Chen ("Chen") is a twenty-five year old citizen of the People's Republic of China ("China"). On October 5, 1994, Chen married Ai–Ling Jiang ("Jiang") in an informal ceremony. The marriage was not recognized by the Chinese government because they were not of legal marrying age. As a result, they could not obtain a permit to have children.

In February 1995, Jiang learned she was pregnant. When they went to the clinic for a pre-natal examination, family planning officials attempted to detain the Chens because they could not provide a marriage certificate, which is required to obtain a birth permit. The couple escaped and went to stay with relatives to hide from the officials. Family planning officials continued to search for them.

With the help of immigrant smugglers and a fraudulent passport, Chen fled to the United States in April 1995.[2] He was immediately apprehended and applied for asylum ("first application"). As grounds for his first application, Chen claimed that if he were returned to China, government authorities would persecute him on account of his and his father's pro-democracy activities. Chen did not state in his first application that family planning officials sought him for violating China's marriage and family planning laws because at that time, opposition to family planning policies was not a recognized basis for asylum. An Immigration Judge ("IJ") denied his first application and ordered him deported to China.

Upon his return to China, government authorities apprehended and detained Chen, beating him so severely that he required prolonged hospitalization. About a month later, Chen escaped from the detention hospital and begged on the streets until he collected enough money to contact his relatives for help. An uncle brought Chen to his parents' home, but he

---

1. The Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

2. While Chen was in the United States, his son, Chen Zhifet was born. Jiang and Chen Zhifet continue to live in hiding in China.

soon left to protect them from harm. For the next two years, Chen lived in a small town where he worked at various unskilled jobs.

Chen returned to the United States in 1998 and again applied for asylum ("second application"), or in the alternative, withholding of removal, based on his resistance to China's family planning policies. Chen testified in support of his second application and submitted documentary evidence, including letters from family members and neighbors, as well as a family planning department notice requiring Chen's wife to appear for an abortion. Chen also submitted corroborating evidence of conditions in China, demonstrating how people who violate China's government policies, including its marriage and family planning laws, are continually repressed. An IJ conducted a hearing on the merits and concluded that Chen had not presented credible evidence in support of his second application. The IJ also held that Chen had submitted a frivolous asylum claim.

Chen appealed the denial to the BIA, which dismissed his appeal in a split decision. Contrary to the IJ, the BIA determined that Chen's claim was not frivolous. However, the BIA agreed with the IJ's conclusion that Chen lacked credibility and on that basis, denied his petition for asylum and withholding of removal.

## II. Standard of Review

■■■ Where the BIA conducts an independent review of the IJ's findings, this court reviews the BIA's decision and not that of the IJ, except to the extent the IJ's opinion is expressly adopted. *Ghaly v. I.N.S.*, 58 F.3d 1425, 1430 (9th Cir.1995). In the instant case, the BIA found that Chen's testimony was not credible, and that he therefore failed to meet his burden of proving his eligibility for asylum and withholding of removal. The task of this court is to determine whether substantial evidence supports the finding of the BIA. *Sidhu v. I.N.S.*, 220 F.3d 1085, 1088 (9th Cir.2000). In doing so, we independently evaluate each ground cited by the BIA for its finding. *See Shah v. I.N.S.*, 220 F.3d 1062, 1066–67 (9th Cir.2000).

■■■ The factual findings underlying the BIA's adverse credibility determination will be upheld on review unless "any reasonable adjudicator would be compelled to conclude to the contrary." I.N.A. § 242(b)(4)(B), 8 U.S.C. § 1252(b)(4)(B) (Supp. II 1996). Although the substantial evidence standard for reviewing credibility findings by the BIA is deferential, the BIA must have a " 'legitimate articulable basis to question the petitioner's credibility, and must offer a specific, cogent reason for any stated disbelief.' " *Shah*, 220 F.3d at 1067 (quoting *Osorio v. I.N.S.*, 99 F.3d 928, 931 (9th Cir.1996)). Adverse credibility determinations based on minor discrepancies, inconsistencies, or omissions that do not go to the heart of an applicant's asylum claim cannot constitute substantial evidence. *See Akinmade v. I.N.S.*, 196 F.3d 951, 954 (9th Cir.1999).

## III. Asylum and Withholding of Removal

### A. Background

To establish eligibility for asylum, a petitioner must show that he or she is a "refugee" within the meaning of I.N.A. § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A). I.N.A. § 208(b)(1), 8 U.S.C. § 1158(b)(1) (Supp. II 1996). A refugee is defined as a person who is unwilling or unable to return to his home country because he has experienced past persecution or has a well-founded fear of future persecution on account of his race, religion, nationality, membership in a particular social group, or political opinion. I.N.A. § 101(a)(42)(A), 8

U.S.C. § 1101(a)(42)(A) (Supp. II 1996). Resistance to coercive family planning measures is expressly included within the "political opinion" ground for asylum. 8 U.S.C. § 1101(a)(42)(B) (Supp. II 1996).

■ An application for asylum made in removal proceedings is also considered a request for withholding of removal. I.N.A. § 241(b)(3), 8 U.S.C. § 1231(b)(3) (Supp. II 1996); *see also* 8 C.F.R. § 208.3(b) (2000). However, the applicant must meet a stricter standard of proof for this relief, "in part because an applicant who meets that standard is not only eligible for, but entitled to, such relief." *Navas v. I.N.S.*, 217 F.3d 646, 655 (9th Cir.2000). Withholding of removal will be granted where an applicant establishes a "clear probability" that he or she would be persecuted if returned to his or her home country. *Id.* In other words, an applicant must establish that it is "more likely than not" that he or she will be persecuted on a statutorily-protected ground. *Id.*

■ An applicant's testimony alone may be sufficient to meet the burden of proving past persecution if such testimony is candid, credible, and sincere. *See Kataria v. I.N.S.*, 232 F.3d 1107, 1114 (9th Cir.2000). To meet the burden of showing a well-founded fear of future persecution, an applicant must demonstrate that his or her fear is both subjectively genuine and objectively reasonable. *Id.* at 1113.

The BIA dismissed Chen's appeal on grounds that the record adequately supported the IJ's adverse credibility findings. The BIA based its decision on three factors: (1) Chen's admission that his first application for asylum contained a fraudulent notarial birth certificate; (2) Chen's submission of two distinct asylum applications; and (3) a general finding of inconsistency and vagueness. Because it found his application not to be credible, the BIA did not address the merits of Chen's applica-tion for asylum and withholding of removal.

We find that the shortcomings upon which the BIA relied were insufficient grounds for its adverse credibility finding in this case. *See Shah*, 220 F.3d at 1068 (stating that if discrepancies cannot be viewed as attempts by the asylum applicant to enhance his or her claims of persecution, they have no bearing on credibility); *Akinmade*, 196 F.3d at 955 (finding that fraudulent documents presented for matters incidental to claims of persecution do not undermine an applicant's overall credibility because they do not go to the heart of the asylum claim). We further find that Chen established his eligibility for asylum and withholding of removal with credible, direct and specific evidence of past persecution, a well-founded fear of future persecution, and the clear probability that he would be persecuted if returned to China.

## B. Credibility

### 1. Counterfeit Birth Certificates

■ The record confirms that the two notarial birth certificates Chen submitted with his first application state that he was born in 1979, although the birth certificate submitted with his second application lists his correct birth year, 1975. The BIA cited this documentary evidence, and the fact that Chen did not explain or rebut their counterfeit nature, in finding Chen not to be credible. We find that the birth certificates are not a legitimate basis for an adverse credibility finding in this case.

First, the BIA discounted Chen's credibility because he did not explain or rebut the counterfeit nature of these documents. However, Chen was in fact forthright when asked whether he knew the original birth certificate was fraudulent: he testified that he did not and that perhaps his

relatives had made a mistake when applying for the documents. We find no evasiveness in this answer. In *Shah*, 220 F.3d at 1068, this court would not uphold an adverse credibility finding based on a discrepancy between the date listed on the death certificate of the petitioner's husband and the date of death identified by the petitioner in her testimony. We reasoned that because "the discrepancy [was] capable of being attributed to a typographical or clerical error," it could not form the basis of an adverse credibility finding. *Id.* Here, as in *Shah*, "[t]here are any number of reasons to account for" the discrepancies between the dates in the birth certificates submitted in Chen's first and second applications. *See id.* As the dissent to the BIA's majority opinion noted in this case, by not considering Chen's explanation, the IJ and the majority ignored well-established precedent that testimonial evidence may be the most important and dispositive part of any asylum claim.

More importantly, if discrepancies "cannot be viewed as attempts by the applicant to enhance his claims of persecution [they] have no bearing on credibility." *Damaize–Job v. I.N.S.*, 787 F.2d 1332, 1337 (9th Cir.1986); *see also Vilorio–Lopez v. I.N.S.*, 852 F.2d 1137, 1142 (9th Cir.1988) (stating "[m]inor inconsistencies in the record such as discrepancies in dates which reveal nothing about an asylum applicant's fear for his safety are not an adequate basis for an adverse credibility finding"). The only stated purpose of the birth certificates in Chen's first application was to determine whether he should be detained as an adult or a minor. The purpose of the notarial certificate in his second application is simply to establish Chen's identity and his date of birth. In neither instance do the birth certificates enhance his claims for asylum. These documents were incidental to Chen's claims for asylum in his first and second applications and reveal nothing about his fear for his safety. *See Akinmade*, 196 F.3d at 954.

Because there are any number of reasons to account for the discrepancies in the birth certificates and these documents do not go to the heart of Chen's claim, they cannot form the basis for an adverse credibility finding.

**2. Inconsistent Applications**

▮▮▮ In finding Chen not to be credible, the BIA also cited inconsistencies in the grounds upon which Chen based his first and second asylum applications. Specifically, Chen's first application was based upon his and his father's pro-democratic activities, and his second application cited China's coercive population control as basis for relief. Also, in his first application Chen identified himself as single, and in his second application he identified himself as married. All plausible and reasonable explanations for any inconsistencies must be considered. *See Osorio v. I.N.S.*, 99 F.3d 928, 932 (9th Cir.1996). In doing so, we find that the factors articulated by the BIA do not support an adverse credibility finding.

Chen explains that he based his first asylum application on pro-democracy grounds because resistance to China's population control policies was not a viable basis for an asylum claim in 1995. Accordingly, in that application he cited his flight from political oppression of his and his father's democratic views, which provided a stronger legal basis for asylum at that time. However, at the time of his second application in 1999, resistance to China's population control policies was a viable basis for an asylum claim. Because his first application on pro-democracy grounds failed and he was also fleeing due to his family planning views, Chen cited the lat-

ter ground in his second application.[3] We fail to see how Chen's observance of immigration law constitutes a basis for finding him not to be credible. The BIA majority itself admitted as much when it acknowledged that such an explanation was more than reasonable in light of the state of the law in 1995.

Chen acknowledges that he was inconsistent in reporting his marital status on his first and second applications. He explains that he marked "single" on his first application, but "married" on his second application because of his confusion about how to characterize his marriage in light of the Chinese government's view that his marriage was not official. Here again, Chen's explanation is more than reasonable and insufficient grounds exist upon which to find him not to be credible.

### 3. General Inconsistency and Vagueness

█ Finally, we disagree that Chen's second application and testimony was otherwise inconsistent or vague. Contrary to the findings of the IJ and BIA, a close reading of his testimony reveals that his statements about the officials who beat him, his whereabouts after he escaped from the hospital, and the residence of his wife and son were credible and consistent throughout the application process. Moreover, even though Chen did not spontaneously mention his wife's family planning notice when testifying in support of his second application, that does not discredit him. First, the notice was already in evidence and second, he acknowledged the notice when asked. Finally, Chen's descriptions about his escape from family planning officials was concrete and consistent throughout his testimony. The BIA failed to provide the requisite specific, co-

gent reason for discrediting Chen on this basis. In light of his concrete and consistent testimony, the BIA's general speculation and conjecture about the plausibility of his account does not suffice to find him not to be credible.

For these reasons, the BIA's adverse credibility finding is reversed. Given our finding of Chen's credibility, his statements should be accepted as true. *See Kataria*, 232 F.3d at 1113.

█ Because the BIA did not consider whether Chen had established eligibility for asylum or withholding, the INS contends that we must remand to the BIA to consider the merits of Chen's claim. However, based on sound principles of administrative law and jurisprudence, we generally "do not remand a matter to the BIA if, on the record before us, it is clear that we would be compelled to reverse its decision if it had decided the matter against the applicant." *Navas*, 217 F.3d at 662; *see also Gafoor v. I.N.S.*, 231 F.3d 645, 656 n. 6 (9th Cir.2000). The incremental decision-making that may otherwise follow risks "a series of unnecessary and inefficient remands, to the detriment of the party seeking relief." *Navas*, 217 F.3d at 662.

We recognize that based on its adverse credibility finding, it was reasonable for the BIA not to address the merits of Chen's petition for asylum and withholding of removal. However, a review of the complete administrative record before us allows us to properly evaluate Chen's claim for relief.

### C. Past Persecution and Well–Founded Fear of Future Persecution

█ A petitioner's past persecution and his well-founded fear of future perse-

---

**3.** We note that the BIA acknowledged Chen's persecution on account of his political activities and his violation of coercive population control policies in reversing the IJ's finding that the second application was frivolous.

cution are alternative grounds upon which a petitioner can prove his or her eligibility for asylum. I.N.A. §§ 101(a)(42)(A), 208(a), 8 U.S.C. §§ 1101(a)(42)(A), 1158(a) (Supp. II 1996). For purposes of analyzing a claim for relief under the I.N.A., "persecution" is the infliction of suffering or harm upon those who differ in a way regarded as offensive. *Pitcherskaia v. I.N.S.*, 118 F.3d 641, 647 (9th Cir.1997). This is an objective definition, which turns on what a reasonable person would find "offensive." *See id.* A petitioner who establishes past persecution is presumed to have a well-founded fear of persecution. 8 C.F.R. § 208.13(b) (2000).[4]

■ To establish asylum eligibility on the basis of past persecution, an applicant must demonstrate "(1) an incident, or incidents, that rise to the level of persecution; (2) that is 'on account of' one of the statutorily-protected grounds; and (3) is committed by the government or forces the government is either 'unable or unwilling' to control." *Chand v. I.N.S.*, 222 F.3d 1066, 1073 (9th Cir.2000) (citing *Navas*, 217 F.3d at 655–56).

■ As for the first part of this test, the undisputed facts in the record show that upon returning to China, government officials beat Chen to the point where he required hospitalization. He bears the scars of this physical punishment to this day. Importantly, the detention hospital not only treated his injuries, but also detained him from freedom, as illustrated by his escape through a window. We find that this incident rises to the level of persecution.

Next, Chen must meet two requirements to show that he was persecuted "on ac-

count of" his political opinion about China's family planning policies. First, Chen must establish that he held, or that his persecutors believed that he held, a political opinion. *I.N.S. v. Elias–Zacarias*, 502 U.S. 478, 482–83, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). Second, he must show that he was persecuted because of his political opinion. *Id.* at 483–84, 112 S.Ct. 812.

The record shows that Chen was married and conceived a child without the permission of the Chinese government. We find that these two acts in deliberate contravention of Chinese law show that Chen held a political opinion that contradicted Chinese law—namely, Chen's political opinion is based on freedom to create one's own family. In light of these two blatant acts of defiance, there is little doubt that Chinese family planning officials believed that Chen held this opinion. It is also clear that Chinese officials persecuted Chen because of his political opinion. When family planning notified the Chens of their violation and ordered Jiang to appear for an abortion, the Chens fled. Authorities continued to search for the couple. When he returned to China after his first petition for asylum was denied, Chinese officials finally caught Chen and punished him for evading the family planning laws. This persecution, based upon his resistance to China's family planning policies, is a statutorily-protected ground upon which Chen may seek asylum. *See* I.N.A. § 101(a)(42)(B), 8 U.S.C. § 1101(a)(42)(B) (Supp. II 1996).

Finally, it is evident that Chen suffered this persecution at the hands of the Chinese government. The record shows that family planning authorities persecuted Chen. In China, such authorities are em-

---

4. This presumption may be rebutted where the I.N.S. shows by a preponderance of the evidence that the conditions in the petitioner's home country have significantly changed.

*I.N.S. v. Cardoza–Fonseca*, 480 U.S. 421, 431, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987). There is no evidence in the record suggesting such changes have occurred in China.

ployed by the government. Chen also was detained, beaten, and pursued by government security forces. After he escaped, government authorities continued to search for him. This history satisfies the third requirement that Chen must meet to establish past persecution in order to be eligible for a discretionary grant of asylum in the United States. As we have stated, because we find that Chen has credibly established he was persecuted in the past, we also find that his fear of future persecution is well-founded, offering an alternative ground upon which his petition for relief may be granted.

Having established past persecution, Chen is entitled to a presumption that his fear of future persecution is well-founded. Notwithstanding this presumption, we also find that Chen meets the subjective and objective elements of proving his well-founded fear. Chen credibly testified that he has been pursued and beaten by Chinese authorities and that he genuinely fears he will face more of the same if he returns to that country. In addition to this subjective fear, we find that his fear is objectively reasonable in light of the facts of this case.

### D. Clear Probability of Future Persecution

■ In addition to finding that Chen is eligible for a discretionary grant of asylum, we also find that Chen meets the standard of proving that he is eligible for withholding of removal. The record shows a clear probability—or more than a fifty percent chance—that he would be persecuted if he were returned to his home country. *See Lim v. I.N.S.*, 224 F.3d 929, 938 (9th Cir.2000).

Chinese officials relentlessly pursued Chen after he and Jiang became pregnant. In addition to issuing a family planning notice requiring Jiang to appear for an abortion, they pursued the couple physically, searching for them at relatives' homes in the countryside. These actions were not idle threats, which became evident when they caught Chen and beat him unconscious. He has now fled China two times, which is a violation of Chinese law in itself. If he were to return to China, there is little doubt—and certainly more than a fifty percent chance—that his persecutors would continue to inflict emotional and physical punishment for his contravention of the family planning laws. For these reasons, we find that Chen is also entitled to withholding of deportation.

### IV. Conclusion

Our finding that Chen has credibly demonstrated his eligibility for relief does not automatically entitle him to asylum. Once it is determined that an applicant is statutorily eligible for asylum, the next inquiry "is whether the eligible applicant is *entitled* to asylum as a matter of discretion." *Kazlauskas v. I.N.S.*, 46 F.3d 902, 905 (9th Cir.1995); *see also* 8 U.S.C. § 1158(a) (Supp. II 1996). Under § 1158(a), the Attorney General has the discretionary authority to grant asylum. *Yang v. I.N.S.*, 79 F.3d 932, 935 (9th Cir.1996). We remand this part of Chen's claim for the Attorney General to determine, in the exercise of his discretion, whether to grant asylum to Chen.

In view of the confinement and persecution Chen suffered and his genuine fear that he will be persecuted if returned to China, we deem it only just and equitable that Chen be granted withholding of removal. This relief is mandatory. We therefore grant his petition for withholding of removal.

PETITION FOR REVIEW GRANTED; APPLICATION FOR WITHHOLDING OF DEPORTATION GRANTED; APPLICATION FOR ASYLUM RE-

MANDED (for the exercise of the Attorney General's discretion).