**Lucian Ioan POPP, Petitioner,**

v.

**IMMIGRATION & NATURALIZATION SERVICE, Respondent.**

No. 01–70637.

INS No. A72–129–369.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 12, 2002.

Decided July 12, 2002.

Before BROWNING, B. FLETCHER and GOULD, Circuit Judges.

## MEMORANDUM*

The Immigration Judge ("IJ") made an express adverse credibility finding: "I do not find the respondent's testimony and fear of persecution to be credible."

■ However, the IJ's finding that Popp was not credible was not supported by substantial evidence. *See Chen v. INS,* 266 F.3d 1094, 1098 (9th Cir.2001). The IJ based his adverse credibility finding on his belief that the Romanian government would not have continued to employ Popp as a pilot if it were concerned about his political views; that Popp's position as a pilot would have made it harder, not easier, for the government to keep him under surveillance; and that Popp would have left Romania earlier if he truly feared persecution. The IJ's disbelief was not based on any specific, cogent reason but rather on the IJ's own speculation and conjecture. *See Gui v. INS,* 280 F.3d 1217, 1228 (9th Cir.2002) (reversing an IJ's adverse credibility finding when "the IJ offered his own conjecture, which 'is not a substitute for substantial evidence' and should not be

credited by this panel"). We deem Popp's testimony credible. *See Akinmade v. INS,* 196 F.3d 951, 957–958 (9th Cir.1999).

■ Substantial evidence does not support the Board of Immigration Appeals' ("BIA's") finding that Popp did not suffer past persecution in Romania. *See Gui,* 280 F.3d at 1228–1229. The events to which Popp testified, including constant surveillance, numerous detentions and frequent interrogations, a beating by his military superiors, unfavorable work assignments far from his family, and threats to harm him and his family, cumulatively rose to the level of persecution.[1] *See Surita v. INS,* 95 F.3d 814, 819 (9th Cir.1996) ("while a single incident, in some instances, may not rise to the level of persecution, the cumulative effect of several instances may constitute persecution"). We recently found a Romanian petitioner suffered past persecution on account of political opinion in a similar factual situation. *See Gui,* 280 F.3d at 1229 (concluding petitioner suffered past persecution when his phone was tapped, he was detained for 24 hours and interrogated about his anti-communist activities, his house was searched without a warrant, and he was the victim of two hit-and-run accidents staged by the Romanian police).

■ Since Popp's credible testimony established past persecution, we presume his fear of future persecution to be well-founded. 8 C.F.R. § 208.13(b)(1). Substantial evidence does not support the IJ's apparent finding that changed conditions in Ro-

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

1. Since the BIA found Popp was not persecuted, it made no findings as to whether Popp's treatment was based on his political opinion. However, it is clear from the record that Popp's persecution was on account of his

anti-Communist opinions. Popp credibly testified his persecutors were aware of his political views even before he joined the National Christian Peasant Democratic Party. Moreover, many of the instances of persecution occurred immediately after Popp allegedly helped two pilots with anti-Communist views defect and after he participated in an anti-government demonstration.

mania effectively rebutted the presumption. *Gui*, 280 F.3d at 1229. The IJ quoted portions of a State Department report generally describing conditions in Romania in 1994. However, neither the IJ nor the State Department report undertook the kind of individualized analysis of Popp's situation required to rebut the presumption. *See id.* (deciding presumption was not rebutted where the only evidence in the record of country conditions was a seven year old State Department report and the BIA summarily concluded that petitioner's fear of returning to Romania should be diminished because of changed conditions). Because the record clearly shows that the material in the record regarding country conditions will not serve to rebut the presumption, remand to the BIA for further hearing would not be appropriate. *See Chand v. INS*, 222 F.3d 1066, 1078 (9th Cir.2000).

■ Popp is not entitled to withholding of deportation because he has not demonstrated it is "more likely than not that he will be persecuted on account of one of the five enumerated factors were he to return" to Romania. *See Ladha v. INS*, 215 F.3d 889, 897 (9th Cir.2000).

Because Popp is eligible for asylum, his petition for review is GRANTED and this case is REMANDED to the BIA for an exercise of discretion by the Attorney General.

GOULD, Circuit Judge, concurring.

Though I concur in the result, I do not fully agree with the majority's grounds for decision. As I read the Immigration Judge's decision, the IJ, despite loose language, was not making a credibility determination, but more precisely was holding that the facts described by petitioner Popp were insufficient to show past persecution or to create a credible fear of future persecution. Further, I do not read the record

to demonstrate "constant surveillance" (it was occasional, if at all) or "numerous detentions and frequent interrogations" (there were two principal events). Notwithstanding my differences with the majority analysis, I concur in the judgment because of Popp's uncontradicted evidence of the Romanian government's beating of Popp, the Romanian government's threat to his daughter, and related uncharitable treatment of him that demonstrate the required elements of an asylum claim under our precedent, which I am bound to follow.

It should be noted, however, that the current system for timely agency assessment of asylum claims may be broken and in need of repair. Popp left Romania in the early 1990s at a time of great domestic instability. Popp's evidence supporting his fears of persecution if returned related to the period 1991–1992. The government's responsive evidence about differing country conditions related to 1994. Only heaven knows why the case languished for so long in the BIA, during which time Popp's connections with the United States could only have strengthened and his ties to Romania could only have become more attenuated. But it can fairly be said that the record before us sheds absolutely no light on current country conditions in Romania that one might think relevant to an asylum claim. Popp, perhaps, cannot be faulted for this, but I believe it was incumbent upon the government at some point to move to reopen proceedings to give the case a greater connection with reality and is incumbent also upon the BIA to move cases through its appeals process with more dispatch.