**Abiy ASSEFA, Petitioner,**

v.

**Alberto R. GONZALES,\* Attorney General, Respondent.**

**No. 03–71905, 03–74421.**
**Agency No. A75–674–877.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 5, 2005.

Decided June 17, 2005.

---

\* Alberto R. Gonzales is substituted for his predecessor, John Ashcroft, as Attorney General of the United States, pursuant to Fed. R.App. P. 43(c)(2).

Eric P. Lin, Esq., Carol L. Edward, Esq., Law Offices of Carol L. Edward, Seattle, WA, for Petitioner.

Regional Counsel, Western Region, Laguna Niguel, CA, Ronald E. LeFevre, Chief Counsel, Office of the District Counsel, Department of Homeland Security, San Francisco, CA, WWS–District Counsel, Immigration and Naturalization Service, Office of the District Counsel, Seattle, WA, Julia K. Doig, Esq., Office of Immigration Litigation, Arthur L. Rabin, Esq., U.S. Department of Justice, Washington, DC, for Respondent.

Before WALLACE, SILVERMAN, and PAEZ, Circuit Judges.

WALLACE, Senior Circuit Judge, concurring and dissenting.

** This disposition is not appropriate for publication and may not be cited to or by the

## MEMORANDUM **

In case no. 03–71905, Abiy Assefa, a native and citizen of Ethiopia, petitions for review of the BIA's final order of removal affirming without opinion the IJ's denial of Assefa's application for asylum and withholding of removal and for protection under the Convention Against Torture.

■ We grant the petition for review and remand because the IJ's adverse credibility finding is not supported by substantial evidence. *See Lopez–Reyes v. INS*, 79 F.3d 908, 911 (9th Cir.1996). The IJ gave three reasons for her credibility finding. First, the IJ found that although Assefa claimed persecution on account of his half-Eritrean ethnicity, he testified that people unfamiliar with him would not know that he was half-Eritrean just by looking at him. This finding does nothing to impugn Assefa's credibility, as it ignores the other means of ascertaining an individual's ethnicity available to the government, including government records, birth records, and identity cards.

The IJ's second reason for questioning Assefa's credibility is grounded upon the IJ's patent misunderstanding of Assefa's testimony regarding the passport he used to enter the United States. The record reflects that Assefa's actual testimony at the hearing was consistent with both his affidavit submitted in support of his asylum application and his pre-hearing statement.

■ Finally, the IJ concluded that the identity card presented by Assefa in support of his asylum application was a fraudulent document because of what she perceived to be a discrepancy between the place of birth listed on the card (Chercher) and the city identified by Assefa in his testimony, asylum application, and pre-

courts of this circuit except as provided by Ninth Circuit Rule 36–3.

hearing statement (Dese). Substantial evidence does not support the finding that the document is fraudulent. The IJ cited nothing beyond the supposed discrepancy to support her finding. There is no evidence in the record that the identity card appeared to have been doctored or tampered with, nor is there forensic evidence that the card is a fake.

The IJ simply assumed that Dese and Chercher are both cities, as opposed to a city and an administrative area, respectively. The IJ's assumption finds no foundation in the record. Indeed, the Ethiopian map accompanying the Country Conditions Report shows Dese to be a city. Chercher is not shown.[1] Moreover, the IJ's conjecture fails to take into account the recent changes in geo-political boundaries in Ethiopia, as reflected in the record. *See, e.g.,* 1999 Country Report on Human Rights Practices (discussing Ethiopia's continuing transition from a unitary to a federal system of government and the resulting creation of "new federal regions, organized along ethnic lines").

Finally, in explaining why Chercher appears on his identity card, Assefa testified that Chercher denotes his father's ethnicity. The record does not support the rejection of this plausible explanation. An adverse credibility finding cannot be sustained without first considering plausible and reasonable explanations for any perceived inconsistencies. *Wang v. Ashcroft,* 341 F.3d 1015, 1022 (9th Cir.2003); *see also Chen v. INS,* 266 F.3d 1094, 1099 (9th Cir.2001) (reversing BIA's ruling that

birth certificates were counterfeit where there were other plausible reasons to account for discrepancy), *vacated on other grounds,* 537 U.S. 1016, 123 S.Ct. 549, 154 L.Ed.2d 423 (2002).

None of the three grounds articulated by the IJ as the basis for her adverse credibility finding is supported by substantial evidence. Accordingly, we reverse the credibility finding. *See Ding v. Ashcroft,* 387 F.3d 1131, 1133 (9th Cir.2004) (holding that when the "bases for the IJ's adverse credibility finding are either unsupported or contradicted by the record evidence, the IJ's adverse credibility finding is not supported by substantial evidence"). In case no. 03–71905, we grant the petition and remand to the BIA for further proceedings to determine the merits of Assefa's case. *See INS v. Ventura,* 537 U.S. 12, 16–18, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002) (per curiam).

In case no. 03–74421, Assefa petitions for review of the BIA's denial of his motion to reopen for adjustment of status on account of his recent marriage to a United States citizen. The BIA ruled that Assefa failed to satisfy the procedural requirements of 8 C.F.R. § 1003.2(c)(1), because he did not submit a complete application for adjustment of status, and further that Assefa failed to present clear and convincing evidence indicating a strong likelihood that the marriage is bona fide. This ruling is not an abuse of the BIA's discretion, *see Konstantinova v. INS,* 195 F.3d 528, 529 (9th Cir.1999), and we deny the petition.

---

1. A review of Ethiopian geography reveals that, while Dese is a city, Chercher is a "wereda"—an administrative entity—in the Southern Zone of the Tigray Region. *See* Hans Spiess, Field Officer Regions 1 & 3, *Field Trip to Tigray, North Wello and South Gonder,* UN Dev. Programme, Emergencies Unit for Ethiopia, 17 July—12 August 1994, *available at* http://www.sas.upenn.edu/African_Studies/eue_web/Ngo_nrth.htm; Markos Ezra & Gebre–Egziabher Kiros, *Household Vulnerability to Food Crisis & Mortality in the Drought–Prone Areas of N. Ethiopia,* Journal of Biosocial Science, 2000 (32, 395–409), *available at* http://www.pstc.brown.edu/ethiopia/hhvulfoodcrisis.pdf ("The *wereda is* the lowest administrative entity in the political geography of present-day Ethiopia.").

Petition for Review of the Final Order of Removal GRANTED, REMANDED; Petition for Review of the BIA's Denial of Motion to Reopen DENIED.

WALLACE, Senior Circuit Judge.

I agree that Assefa's petition for review in case no. 03–74421 should be denied. However, I do not agree that the finding of the Immigration Judge (IJ) that Assefa's identity card was fraudulent was not supported by substantial evidence. I therefore respectfully dissent from the majority's reversal of the IJ's adverse credibility finding in case no. 03–71905.

As the majority points out, Assefa's testimony, asylum application, and pre-hearing statement, all indicated that he was born in Dese, while the identity card that he presented listed Chercher as his place of birth. The majority concludes, however, that this discrepancy does not provide substantial evidence for the IJ's finding that the identity card was fraudulent for three reasons: (1) there is no evidence that the card was doctored or tampered with, or forensic evidence that the card is a fake; (2) the IJ incorrectly assumed that Dese and Chercher are both cities, as opposed to a city and an administrative area, respectively, and did not take into account "recent changes in geo-political boundaries in Ethiopia"; and (3) the IJ improperly rejected Assefa's supposedly "plausible" explanation that Chercher denotes his father's ethnicity. None of these three reasons justify reversal of the adverse credibility finding.

As for the first reason, the majority does not cite any case holding that an IJ may not conclude that a document is fraudulent without evidence of doctoring or tampering. Nor am I aware of such a case. In my view, the discrepancy regarding Assefa's place of birth was a significant one that, in the absence of any reasonable explanation, supported a finding that the document was fraudulent.

The majority's second reason is an attempt to offer a reasonable explanation for the discrepancy. *See Chen v. INS,* 266 F.3d 1094, 1100 (9th Cir.2001) ("All plausible and reasonable explanations for any inconsistencies must be considered."), *vacated on other grounds,* 537 U.S. 1016, 123 S.Ct. 549, 154 L.Ed.2d 423 (2002). The majority holds that the IJ should have realized that Dese is a city and Chercher is an administrative area. Of course, this would explain the discrepancy only if one could conclude that Dese is or was located in the administrative area of Chercher. Instead of citing evidence from the record (or from anywhere) directly supporting that conclusion, the majority asserts that the geo-political boundaries in Ethiopia are changing. Apparently, this is meant to imply that Dese *might* be or have been located in Chercher. But on what factual basis? I cannot join the majority in faulting the IJ for failing to consider such a possibility which, in my view, is wholly speculative. The petitioner did not bring it up—only the majority does. (Indeed, the majority's suggestion that Dese might be or have been in Chercher is inconsistent with Assefa's own explanation for the discrepancy, i.e., that Chercher identifies his father's ethnicity.) An IJ's duty is to consider *plausible* explanations for inconsistencies, *see id.,* not implausible or purely speculative ones.

Third, the majority holds that the IJ should not have rejected Assefa's explanation "that Chercher denotes his father's ethnicity." As an initial matter, this is not exactly what Assefa said; rather, he alternatively stated that Chercher was his father's ethnic group and his father's place of birth. In any event, even putting aside Assefa's vacillating testimony, the IJ properly rejected Assefa's assertion that

Chercher described his father's ethnicity. Chercher is listed on the identity card directly below a line stating "Birth Place Zone" and right next to a line stating "particular place," indicating that the space in which "Chercher" was entered was reserved for the ID-holder's birth place, not the ethnicity of the ID-holder's father. Further, another line on the card states "Ethnicity Tigraye," and it would not make much sense for the identity card to have two separate ethnicity-related entries. Thus, contrary to the majority's conclusion, the record amply supports the IJ's rejection of Assefa's implausible explanation.

In conclusion, I do not feel compelled to reverse the adverse credibility finding. *See id.* at 1098 ("The factual findings underlying [an] adverse credibility determination will be upheld on review unless 'any reasonable adjudicator would be compelled to conclude to the contrary.'" (quoting 8 U.S.C. § 1252(b)(4)(B))). I think it wrong to fault the IJ for failing to consider alternative explanations for the discrepancy between the identity card and other record evidence when the majority itself cannot come up with a plausible explanation that is consistent with Assefa's own explanation. I also conclude that the IJ properly rejected Assefa's illogical explanation for the discrepancy. The discrepancy provided a reasonable basis for the IJ's finding that the identity card was fraudulent. Therefore, substantial evidence supported the IJ's adverse credibility finding. I respectfully dissent in case no. 03–71905.