Xuan WANG, Petitioner,

v.

John ASHCROFT, Attorney General, Respondent.

No. 02–47086.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 8, 2003.

Filed Aug. 29, 2003.

Judith L. Wood and Jesse A. Moorman, Los Angeles, CA, for the petitioner-appellant.

Leslie McKay and James A. Hunolt, Office of Immigration Litigation, for the respondent-appellee.

* The Honorable Frederick J. Martone, United States District Judge for the District of Arizona, sitting by designation.

Before: B. FLETCHER, SILVERMAN, Circuit Judges, and MARTONE,* District Judge.

## OPINION

BETTY B. FLETCHER, Circuit Judge.

Xuan Wang ("Wang") appeals the Bureau of Immigration Appeal's ("BIA") decision to affirm the Immigration Judge's ("IJ") adverse credibility determination. The IJ found Wang removable from the United States because she was employed without authorization while present as the spouse of a nonimmigrant student. Wang applied for asylum and withholding of removal because she was subject to two forced abortions pursuant to China's strict one-child policy and will be subject to sterilization procedures if she returns to China. She provided testimony and documentary evidence that she had two forced abortions. We have jurisdiction pursuant to 8 U.S.C. § 1252. We conclude that (1) the BIA erred in denying Wang's application for asylum because the adverse credibility determination is not supported by substantial evidence and (2) the Immigration and Naturalization Service ("INS") failed to rebut the presumption of future persecution. Accordingly, we grant the petition for review and find that Wang is eligible for asylum and entitled to withholding of removal.

## I. BACKGROUND

Wang, a native and citizen of China, entered the United States on October 13, 1996 as a nonimmigrant visitor. On March

3, 1997, her status was adjusted to F–2, a spouse of a nonimmigrant student. In July 1997, she was employed for compensation without INS authorization. On September 18, 1997, the INS initiated removal proceedings against Wang. Wang conceded removability and applied for political asylum under 8 U.S.C. § 1158(a), withholding of removal under 8 U.S.C. § 1231(b)(3)(A), withholding of removal under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, *opened for signature* Dec. 10, 1984, art. 3, S. Treaty Doc. No. 100–20 (1988), 1465 U.N.T.S. 85 (entered into force June 26, 1987), and, in the alternative, voluntary departure under 8 U.S.C. 1229c(b)(1).

Wang petitioned for asylum claiming that she was forced to have two abortions and an intrauterine contraceptive device ("IUD") inserted pursuant to China's one-child policy. Attached to her asylum application, Wang provided a declaration regarding the details of events surrounding the forced abortions and medical records substantiating both abortions. She also provided details through testimony at the IJ hearing held on April 23, 1999.

In May 1994, Wang gave birth to a male child by caesarian procedure in Shanghai, China. Wang was to receive an IUD six months after her son's birth. However, five months later, she became pregnant again. At the time of her second pregnancy, she was working for a government enterprise.[1] The hospital notified the family planning officers at Wang's place of employment that she was pregnant. Family planning officers coerced Wang into getting an abortion by reducing her wages and threatening to fire her if she did not obtain an abortion. Wang relented and

had the first abortion in November of 1994. Following this incident, Wang quit her government job and began working for a joint Chinese American venture in the hopes that the one-child policy would not be enforced. In April 1995, Wang learned that she was pregnant once again. Despite Wang's hope that changing occupations would alleviate government interference, the local birth control committee learned of her pregnancy and informed Wang and her husband of high penalties they would incur if she had the child. The local birth control committee coerced Wang into having another abortion in May of 1995, and thereafter an IUD was inserted in Wang. After the second abortion, the doctor recommended that sterilization procedures be completed within the year.

Approximately seventeen months after Wang entered the United States, she had the IUD removed in order to become pregnant again. Wang is currently seeing a doctor to adjust her hormone abnormality that resulted from the IUD. In addition to forcible sterilization, Wang fears that if she returns to China she will be subject to sterilization and to imprisonment for removing the IUD.

At the IJ hearing, Wang's husband, Ming Wang ("Ming"), was called as a witness. The IJ conducted a direct examination of Ming. His responses to the IJ comprise most of his testimony. The IJ asked Ming the exact day in November 1994 that Wang had an abortion. Ming responded that he did not quite remember. The IJ then asked Ming what he remembered about that day. Ming testified that he went to work on the day of the abortion and that Wang went from home to the

---

**1.** The Department of State's Country Report states that employees of government-owned entities are subject to especially strict family planning controls and are expected to adopt permanent contraceptive measures after they have a child. Dep't St., 1998 China: Profile of Asylum Claims and Country Conditions 20–24. In addition, in Shanghai, substantial fines may be imposed for noncompliance. *Id.* at 30.

hospital. He stated that he was notified of this fact by an employee from her unit. However, Wang testified that she went from home to work and then was accompanied by an officer from the birth control committee to the abortion clinic.

The IJ also inquired as to the time Wang went to work during a normal business day in November 1994. Ming responded that Wang would normally go to work at 9:00 a.m. and sometimes early, sometimes late. Wang testified that she normally went to work at 6:00 a.m. The IJ then asked Ming if he remembered the time Wang went to work on the day of her abortion in November 1994. Ming responded, "I don't quite remember." He then testified that he came home from work at 2 p.m. and his wife took a taxi cab home from the hospital, while Wang testified that Ming met her at the hospital and the couple took a taxi cab home. The IJ also asked Ming what the couple did after they found out that Wang was pregnant. Ming testified that they went out for dinner. Wang testified that she told her parents. The IJ then said:

> Sir, your wife has told me a completely different story. Again, it's quite contradictory to what you just told me on that very big night in your life when your second child was—I guess, when you determined that you had a second child coming. Who should I believe this time? Should I believe you this time, or should I believe your wife this time?

Ming suggested that the IJ listen to his wife "because I, I am not the one who is involved."

The IJ inquired into the second abortion as to which Ming did not remember the exact date. The IJ asked why he did not remember the date. Ming stated, "Because it was not very pleasant to me, because I don't quite remember because of this kind of situation." He then told the IJ that he did not remember specific details about the event.

On April 28, 1999, the Immigration Judge ordered Wang removed to the People's Republic of China and denied her application for asylum, application for withholding of removal, request for voluntary departure, and her Convention Against Torture claim. The IJ found that Wang and Ming gave "false testimony for the purpose of gaining an immigration benefit." To support its adverse credibility determination, the IJ found that the testimony provided by Wang and Ming was materially inconsistent regarding dates and circumstances of the abortions.

Wang appealed. She requested a new hearing contending that the IJ erred in calling her husband as a witness because it violated her right to a full and fair hearing, and she challenged the IJ's adverse credibility determination used to support its decision to deny asylum and withholding of removal. The BIA dismissed the appeal and affirmed the IJ's decision to deny asylum and withholding of removal. Wang now petitions for review. Despite the denial of Wang's application for asylum, a different IJ subsequently granted Ming political asylum based on Wang's two forced abortions.[2]

## II. DISCUSSION

### A. Eligibility for Asylum

We review the BIA's decision that an alien has not established eligibility

---

**2.** Counsel for the INS at oral argument stated that the panel should not be concerned that Ming was granted asylum while Wang was denied, even though both claimed asylum on the basis that Wang had been forced to have two abortions. Counsel stated that two differ-

ent IJs could reach different results and that the government either could not or would not take steps to seek reconciliation. We wonder how any rational system could tolerate such inconsistent treatment.

for asylum to determine whether it is supported by substantial evidence. *See Espinoza–Castro v. INS*, 242 F.3d 1181, 1185 (9th Cir.2001). Although we normally limit our review to the BIA's opinion, where as in this case, the BIA expressly adopted the IJ's reasoning, we also review the IJ's decision. *See Gonzalez v. INS*, 82 F.3d 903, 907(9th Cir.1996); *Castillo v. INS*, 951 F.2d 1117, 1120 (9th Cir.1991).

■ The Attorney General has discretion to grant asylum to "refugees." 8 U.S.C. § 1158(b)(1). To establish eligibility for asylum, Wang must demonstrate that she is a refugee as defined in 8 U.S.C. § 1101(a)(42). The regulation defines "refugee" as follows:

> a person who has been *forced to abort a pregnancy* or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program, shall be deemed to have been persecuted on account of political opinion, and a person who has a well founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of political opinion.

8 U.S.C. § 1101(a)(42) (emphasis added). The plain language of the statute provides that forced abortions are per se persecution and trigger asylum eligibility. The statute also provides protection for individuals who are forcibly sterilized, *He v. Ashcroft*, 328 F.3d 593, 604 (9th Cir.2003), and the BIA has extended asylum protection to individuals and spouses of individuals forcibly sterilized under China's one-child policy, *In re X–P–T*, 21 I. & N. Dec. 634, 636, 638 (B.I.A.1996); *In re C–Y–Z*, 21 I. & N. Dec. 915, 918–20 (B.I.A.1997). Moreover, "[r]esistance to coercive family planning measures is expressly included within the 'political opinion' ground for asylum." *Chen v. INS*, 266 F.3d 1094, 1099 (9th Cir.2001), *overruled on other grounds by INS v. Ventura*, 537 U.S. 12, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002).

■ Wang was persecuted for not abiding by China's one-child policy. Both times she became pregnant after having her first child, the government harassed her by either deducting her wages, threatening her job stability, or threatening to impose unreasonably high fines. She submitted to the pressure. Wang provided testimony and corroborating medical records that she was subject to two forced abortions. *See Sangha v. INS*, 103 F.3d 1482, 1487 (9th Cir.1997) ("Because asylum cases are inherently difficult to prove, an applicant may establish his case through his own testimony alone.").

■ Since Wang has established past persecution through two forced abortions and an IUD insertion, there exists a rebuttable presumption that she has a well-founded fear of future persecution. *Rios v. Ashcroft*, 287 F.3d 895, 900 (9th Cir. 2002). The burden then shifts to the government to rebut the presumption. *See Salazar–Paucar v. INS*, 281 F.3d 1069, 1074 (9th Cir.2002), *amended by* 290 F.3d 964 (9th Cir.2002). "The INS can rebut this presumption by showing, by a preponderance of the evidence, that the conditions in the applicant's home country have changed such that she no longer has a well-founded fear of persecution." *Rios*, 287 F.3d at 900; 8 C.F.R. § 208.13(b)(1)(i). The INS has presented no evidence to rebut the presumption, and therefore has not met its burden. *See Baballah v. Ashcroft*, 335 F.3d 981, 992 (9th Cir.2003). In fact, the State Department country report on China supports Wang's application for asylum. *See Baballah*, 335 F.3d at 992; DEP'T ST., 1998 CHINA: PROFILE OF ASYLUM

CLAIMS AND COUNTRY CONDITIONS 21, 24–25, 30. The Report notes that "abortion and sterilization are important methods, along with IUD's, employed in implement[ing] the one-child policy" *Id.* at 34.

The IJ decision was based on an adverse credibility determination. Although Wang provided testimony and documentation to support her claim that she had had two abortions and an IUD insertion, the IJ found these medical records unbelievable because Wang did not testify to their authenticity and did not present originals to the IJ. However, there was no opposition to the introduction or challenge to the authenticity of these documents by the INS. Moreover, neither Wang nor Ming was questioned about the documents or their source. There is nothing in the record to support a finding that the documents are not credible.

## B. Credibility Determination

 We review adverse credibility determinations under the substantial evidence standard. *Gui v. INS*, 280 F.3d 1217, 1225 (9th Cir.2002). The IJ found that Wang "clearly failed to meet her burden of proof in establishing that she had been the victim of past persecution" because the inconsistencies in Ming and Wang's testimonies were "significant and meaningful" and "go to the heart of respondent's credibility' on the issue of whether or not she had an abortion." The inconsistencies were (1) Ming not knowing the exact date of the second abortion or the date of the IUD insertion, (2) inconsistent testimony on how the couple celebrated after they found out Wang was pregnant a second time, (3) inconsistent testimony as to what Wang's normal work hours were during November 1994, and (4) inconsistent testimony as to whether Ming went to the hospital to meet Wang after the first abortion. Because of these inconsistencies, the IJ found that Wang and Ming "joined to-

gether to lead this court to conclusions (i.e., that the respondent suffered two abortions) that are false and untrue." The BIA affirmed finding that "material inconsistencies between the testimony of the respondent and her husband support an adverse credibility finding."

Neither the IJ's nor the BIA's adverse credibility determination in respect to whether Wang had forced abortions is supported by substantial evidence. The inconsistent statements are not material to a determination of whether Wang was subject to two forced abortions. This case is comparable to other cases where we have found that the BIA relied on insufficient grounds for its adverse credibility finding. *See Shah v. INS*, 220 F.3d 1062, 1068 (9th Cir.2000) (stating that if discrepancies cannot be viewed as attempts by the asylum applicant to enhance his or her claims of persecution, they have no bearing on credibility) (quotation marks omitted); *Akinmade v. INS*, 196 F.3d 951, 955–56 (9th Cir.1999) (finding that fraudulent documents presented for matters incidental to claims of persecution do not undermine an applicant's overall credibility because they do not go to the heart of the asylum claim); *Chen*, 266 F.3d at 1099–1100 (finding that fraudulent birth certificates are not a legitimate basis for an adverse credibility finding when the IJ fails to consider the applicant's explanation).

 To determine whether substantial evidence supports the BIA's finding, we evaluate each ground cited by the BIA for its finding. *Chen*, 266 F.3d at 1098; *see also Shah*, 220 F.3d at 1066–67. We find that the discrepancies in this case do not go to the heart of Wang's asylum claim, and therefore cannot constitute substantial evidence. *See Chen*, 266 F.3d at 1098; *Akinmade*, 196 F.3d at 954. First, Ming's failure to remember the exact date on which Wang was subjected to abortions

and an IUD insertion is not material. We previously held that "discrepancies in dates which reveal nothing about an asylum applicant's fear for [her] safety are not an adequate basis for an adverse credibility finding." *Vilorio–Lopez v. INS*, 852 F.2d 1137, 1142 (9th Cir.1988) (citing *Damaize–Job v. INS*, 787 F.2d 1332, 1337–38 (9th Cir.1986)). It cannot be implied that Wang did not fear for her safety because her husband does not remember the dates that the Chinese government forced her to have two abortions and an IUD insertion. Second, Wang's testimony was consistent with her application for asylum. *See Sangha*, 103 F.3d at 1487 (stating that "an applicant may establish his case through his own testimony alone"). Third, the discrepancies between Ming and Wang's testimony cannot be viewed as attempts by Wang to enhance her claims of persecution, and therefore, the discrepancies have no bearing on credibility. *Damaize–Job*, 787 F.2d at 1337. Possible conflicting testimony concerning Wang's normal working hours in 1994 does not detract from her claim that the government forced her to have an abortion. Neither can the discrepancy as to whether Ming met Wang at the hospital after her first abortion detract from Wang's claim that she had a forced abortion pursuant to China's one-child policy since it does not enhance her claims of persecution, and therefore, has no bearing on her credibility. Moreover, minor discrepancies as to how the couple celebrated news about a pregnancy does not enhance Wang's claims of persecution. Finally, the BIA failed to consider "[a]ll plausible and reasonable explanations for any inconsistencies." *Chen*, 266 F.3d at 1100; *Osorio v. INS*, 99 F.3d 928, 932 (9th Cir.1996). The IJ dismissed the possibility that Ming could not remember the dates, times, and his exact movements surrounding the discrepancies.

 To support an adverse credibility determination, the BIA must have a "legit-imate articulable basis to question the petitioner's credibility, and must offer a specific, cogent reason for any stated disbelief." *Osorio*, 99 F.3d at 931(quoting *Hartooni v. INS*, 21 F.3d 336, 342 (9th Cir.1994)). A reasonable adjudicator would be compelled to conclude that the factual findings underlying the BIA's adverse credibility determination were not supported by substantial evidence. *See* 8 U.S.C. § 1252(b)(4)(B); *see also He*, 328 F.3d at 595.

### C. Withholding of Removal

 We review the BIA's decision to deny withholding of removal for substantial evidence. *See Del Carmen Molina v. INS*, 170 F.3d 1247, 1249 (9th Cir. 1999). An applicant is entitled to withholding of removal under the INA if it is more likely than not that he or she will be persecuted based on one of the protected grounds if returned to the country of removal. *See* 8 U.S.C. § 1231(b)(3)(A); *Kataria v. INS*, 232 F.3d 1107, 1113 (9th Cir.2000); *Navas v. INS*, 217 F.3d 646, 655 (9th Cir.2000); 8 C.F.R. § 208.16(c)(2).

 The BIA and IJ foreclosed Wang's withholding of removability claims because the IJ found that she was not eligible for asylum. Because Wang has established that she has a well-founded fear of persecution, a presumption arises that she is entitled to withholding of removal if she demonstrates that "it is more likely than not" that she will be subject to persecution if removed. *INS v. Stevic*, 467 U.S. 407, 424, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984); *INS v. Cardoza–Fonseca*, 480 U.S. 421, 430, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987); *Salazar–Paucar*, 281 F.3d at 1077. Wang wants to have more children and has taken measures to become pregnant again. She removed the IUD, in direct contravention of China's one-child policy. If removed to China, not only will

Wang be subject to forced abortions, but she will be subject to forced sterilization. Being subjected to forced sterilization and forced abortions are severe forms of persecution. Therefore, the record supports a conclusion that there exists a clear probability that Wang would face severe punishment if she returns to China. *See Rodriguez–Roman v. INS*, 98 F.3d 416, 430–31 (9th Cir.1996).

### III. CONCLUSION

 We reverse the BIA's and the IJ's adverse credibility determination because it is not supported by substantial evidence. We must now decide whether we determine eligibility for asylum and withholding of removal or whether we remand for a determination by the BIA. *INS v. Ventura*, 537 U.S. 12, 123 S.Ct. 353, 355, 154 L.Ed.2d 272 (2002), counsels that remand to the agency is the proper course except in rare instances. Following the teaching in *He*, 328 F.3d at 604, we conclude that this is one of the rare instances where we need not remand. In *He* we found that "if Mr. He's claim that his wife was forcibly sterilized is believed, he is necessarily eligible for asylum under the BIA's interpretation of the INA," *id.*, because "[a] person who has been forced to abort a pregnancy or to undergo forced sterilization," 8 U.S.C. § 1101(a)(42), "is automatically classified as a refugee," *He*, 328 F.3d at 604. Similarly, whether Wang is eligible for asylum turns entirely on her credibility. *Id.* If Wang's claim that she was forced to abort two pregnancies and subject to an IUD insertion is believed, she is necessarily eligible for asylum as a political refugee. *See* 8 U.S.C. § 1001(a)(42). Therefore, "remand for further proceedings to determine whether [Wang] has met the criteria for eligibility is simply unnecessary." *He*, 328 F.3d at 604. The same holds true for withholding of removal. If Wang's claim that she has been notified that she must be sterilized is believed, she has met the criteria for withholding of removal.

We reverse the BIA decision finding Wang ineligible for asylum since Wang has established her eligibility for asylum with credible, direct and specific evidence of past persecution and has shown a genuine and well-founded fear of future persecution should she return to China. We also find that Wang has met the more stringent standard of withholding of removal because it is more likely than not that she will be persecuted if removed to China. Accordingly, we GRANT the petition for review, VACATE the BIA's denial of withholding of removal and asylum, with instructions that Wang be granted withholding of removal, and REMAND to the Attorney General to exercise his discretion whether to grant asylum.

**PETITION GRANTED; VACATED and REMANDED.**