Ralitsa NEDKOVA, Petitioner,

v.

John ASHCROFT, Attorney General,* Respondent.

No. 02–72432.

Agency No. A78–756–699.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 9, 2003.

Decided Dec. 12, 2003.

Marc Van Der Hout, Van Der Hout & Brigagliano, San Francisco, CA, for Petitioner.

Regional Counsel, Laguna Niguel, CA, Ronald E. LeFevre, Chief Legal Officer, Office of the District Counsel, San Francisco, CA, District Counsel, Phoenix, AZ, Laura Flippin, U.S. Department of Justice, Washington, DC, for Respondent.

Before B. FLETCHER, TASHIMA, Circuit Judges, and POLLAK, Senior District Judge.**

MEMORANDUM***

Petitioner Ralitsa Nedkova, a native and citizen of Bulgaria, petitions for review of the Board of Immigration Appeals' ("BIA's") denial of withholding of removal under section 241(b)(3)(A) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231(b)(3)(A). Ms. Nedkova contests

---

* Attorney General John Ashcroft is substituted for the Immigration and Naturalization Service as the proper respondent. Fed. R.App. P. 43(c)(2).

** The Honorable Louis H. Pollak, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

*** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

the BIA's determination that her treatment by the Bulgarian police and her ex-husband did not constitute persecution on the basis of her Romani, or gypsy, ethnicity. We have jurisdiction under INA section 242(a)(1), 8 U.S.C. § 1252(a)(1).[1]

In reviewing a BIA decision to deny withholding of removal, we undertake to determine whether the decision is supported by substantial evidence. *Wang v. Ashcroft*, 341 F.3d 1015, 1022 (9th Cir. 2003). Factual findings by the BIA are considered conclusive if supported by reasonable, substantial, and probative evidence in the record. *Molina–Estrada v. INS*, 293 F.3d 1089, 1093 (9th Cir.2002). We review questions of law, and the application of legal principles to facts, de novo. *Singh v. Ilchert*, 63 F.3d 1501, 1506 (9th Cir.1995).

Section 241(b)(3)(A) of the INA provides that an alien shall not be removed to a country if "the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). An alien is entitled to withholding of removal under the INA if it is more likely than not that the alien will be persecuted based on a statutorily protected ground if returned to the alien's home country. *Wang*, 341 F.3d at 1022. Although the INA "does not define persecution or specify what acts constitute persecution," *Korablina v. INS*, 158 F.3d 1038, 1043 (9th Cir.1998), this court has consistently defined persecution as "the infliction of suffering or harm upon those who differ (in race, religion or political opinion) in a way regarded as offensive." *Ballabah v. Ashcroft*, 335 F.3d 981, 987 (9th Cir.2003); *Kovac v. INS*, 407 F.2d 102, 107 (9th Cir.1969). A determination that an applicant for withholding of removal has suffered past persecution on a protected ground carries with it a presumption of future persecution. *Molina–Estrada*, 293 F.3d at 1094 (citing 8 C.F.R. § 208.16(b)(1)(i)).

Because the parties are familiar with the facts, we recite only those necessary to aid in understanding this disposition. Between 1996 and 1998, Ms. Nedkova, the daughter of an ethnic Bulgarian mother and a Romani father, was arrested on four occasions and detained each time for between eight and fifteen hours.

She was first arrested in October 1996 while talking with several women on the street. The police officers stopped the group, looked at their personal identification documents, and then took them to the police station, where they were detained for eight hours before being released.

In March 1998, Ms. Nedkova was arrested and detained for fifteen hours after a Bulgarian woman accused Ms. Nedkova of pushing her and attempting to rob her. No charges were filed.

In October 1998, the police arrested Ms. Nedkova, a friend, and the friend's daughter while leaving a park and transported them to a police station to ensure that their identification documents were in order. At the station, approximately twenty

---

1. Ms. Nedkova also contends that her ex-husband's barbaric physical and psychological abuse compels withholding of removal pursuant to the Convention Against Torture ("CAT"), which prohibits removal when it is more likely than not that the alien would suffer torture at the hands of the government of the country to which the alien is sought to be removed. *See* 8 C.F.R. § 208.16(c). Because Ms. Nedkova failed to bring her CAT claim to the attention of the BIA, this court is without jurisdiction to consider it. *Vargas v. INS*, 831 F.2d 906, 907–08 (9th Cir.1987) ("Failure to raise an issue in an appeal to the BIA constitutes a failure to exhaust remedies with respect to that question and deprives this court of jurisdiction to hear the matter.").

Romani women and five children were locked in a room for between twelve and fifteen hours. When Ms. Nedkova and her friend asked the police to give the children some food, the two were taken to another cell and beaten by an officer for at least half an hour (and perhaps as long as an hour) while a second officer watched. A visit to the hospital revealed that Ms. Nedkova's ribs were cracked.

Finally, in December 1998, the police arrested Ms. Nedkova at a coffee shop and brought her to the police station to verify her documents. At the station, she heard the officers say, in substance, "that it will not be bad for them to like get happy and play around with me"—which Ms. Nedkova interpreted as threatening her with rape. She was detained for ten hours and then released.[2]

Both the Immigration Judge and the BIA determined that Ms. Nedkova's claims regarding her encounters with the police were credible. Therefore, we accept her claims as true. *See Navas v. INS,* 217 F.3d 646, 652 n. 3 (9th Cir.2000) ("Where the BIA does not make an express adverse credibility finding, we must assume that the applicant's factual contentions are true."). Despite finding Ms. Nedkova's testimony credible, however, the BIA determined that her treatment by the Bulgarian police did not constitute persecution:

> The respondent bases her claim on past persecution allegedly perpetrated against her by the Bulgarian police as a

result of her Roma (gypsy) ethnicity. However, persecution is an extreme concept, which does not include discrimination on the basis of race or religion, and does not include every sort of oppressive or morally reprehensible treatment. *See Fisher v. INS,* 79 F.3d 955 (9th Cir.1996); *Ghaly v. INS,* 58 F.3d 1425 (9th Cir.1995). We find that the respondent's experiences with the Bulgarian police do not rise beyond the level of discrimination.

■ We view the police's sustained, and at one point savage, mistreatment of Ms. Nedkova—mistreatment that mirrors well-documented patterns of Bulgarian repression of Roma[3]—as rising above the level of discrimination. "While a single incident in some cases may not rise to the level of persecution, the cumulative effect of several incidents may constitute persecution." *Singh v. INS,* 94 F.3d 1353, 1358 (9th Cir.1996). Persecution may be found by "cumulative, specific instances of violence and harassment toward an individual" by the government. *Korablina,* 158 F.3d at 1044. The record reveals a series of police harassments and one instance of grave and extended police brutalization—the lengthy beating that cracked Ms. Nedkova's ribs. This court has consistently found persecution where, as here, the applicant was physically harmed because of her membership in a statutorily protected class. *Duarte de Guinac v. INS,* 179 F.3d 1156, 1161 (9th Cir.1999). In short, we find ample evidence that the Bulgarian police purposively inflicted suffering, in a way

---

**2.** On appeal, Ms. Nedkova alleges that she was also arrested a fifth time in the spring of 2000, when she claims that she was accused of theft and detained at the police station for about three hours. The only testimony in the record cited by Ms. Nedkova to support her allegation of a fifth arrest is her testimony before the Immigration Judge that she was arrested "around five times." She was not asked to describe the fifth arrest. Whether

Ms. Nedkova was arrested a fifth time is not critical to our disposition of this case.

**3.** It appears that the police's treatment of Ms. Nedkova was not unusual. A report released in February 2001 by the U.S. Department of State and included in the record, *Country Reports on Human Rights Practices—2000,* details mistreatment of Roma and other ethnic minorities by the Bulgarian police and ethnic Bulgarians. *See* AR 364–66, 374–75.

912

that can only be regarded as gravely offensive, upon one whose offense was that she was a Roma. In light of this evidence, we find that the conduct of the police towards Ms. Nedkova constitutes persecution as conceived by the INA.[4]

█ The past persecution suffered by Ms. Nedkova establishes a presumption of future persecution. To rebut this presumption, the government must show by a preponderance of the evidence either (1) that there has been a fundamental change in circumstances such that Ms. Nedkova's life or freedom would not be threatened on the basis of her Romani ethnicity upon her removal to Bulgaria, or (2) that Ms. Nedkova could avoid a future threat to her life or freedom by relocating within Bulgaria and that it would be reasonable to expect her to do so. *See* 8 C.F.R. § 208.16(b)(1).

Because the BIA did not find that the harm Ms. Nedkova suffered rose to the level of persecution, it did not consider whether changed circumstances in Bulgaria or the possibility of Ms. Nedkova's relocation could rebut the presumption of future persecution. This issue is properly one for the BIA to resolve in the first instance. *See INS v. Ventura*, 537 U.S. 12, 16–18, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002) (per curiam). Accordingly, we grant the petition for review, reverse the BIA's denial of withholding of removal, and remand to the BIA for further proceedings consistent with this disposition.

PETITION FOR REVIEW GRANTED; REMANDED.

---

4. Because we find that the police's treatment of Ms. Nedkova provides sufficient grounds to grant the petition for review and reverse the BIA's decision, we need not address Ms. Nedkova's contention, rejected by the BIA, that

her ex-husband's opprobrious conduct also constituted persecution under the INA.

