**Qi Ming HE; Xiao Ling Chen; Fan He, Petitioners,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 03–3093.

United States Court of Appeals, Sixth Circuit.

July 22, 2004.

Before SILER and ROGERS, Circuit Judges; and CALDWELL, District Judge.*

ROGERS, Circuit Judge.

The petitioners, Qi Ming He (He), his wife Xiao Ling Chen (Chen), and their son.

Fan He, are all citizens of the People's Republic of China. They challenge the immigration judge's ("IJ") denial of asylum, withholding of removal, and relief under the Convention Against Torture. We uphold the IJ's determination because substantial evidence supports the IJ's factual determinations, and we find no procedural error.

The petitioners claim that they were subjected to past persecution because Chen was coerced to abort their second child in accordance with China's one-child policy. The petitioners claimed in their asylum applications that they were coerced to have an abortion by family planning officials who threatened them with the loss of their jobs and with fines. During their testimony, Chen and He added that they and/or their parents were also threatened with imprisonment and the confiscation of their property. In addition to their forced abortion past persecution claim, the petitioners claim that they have a well-founded fear of future persecution due to their conversion to Christianity since they have been in the United States. The IJ found that the couple was not credible due to numerous inconsistencies within their testimony and between their testimony and their asylum applications. The IJ also refused to let the petitioners testify extensively regarding their religious beliefs after their counsel made an offer of proof that the immigration judge deemed uncorroborated, speculative, and self-serving.

The Board of Immigration Appeals ("BIA") summarily affirmed the IJ. The petitioners now appeal, claiming that the IJ erred by finding them incredible and by denying them the opportunity to testify further regarding their Christianity, and that the BIA erred when it affirmed the IJ

* The Honorable Karen Caldwell, United States District Judge for the Eastern District of Kentucky, sitting by designation.

without opinion. For the following reasons, we deny the petition for review of the BIA's decision.

"The BIA's determination that [the petitioner] was not eligible for asylum must be upheld if supported by reasonable, substantial, and probative evidence on the record considered as a whole." *INS v. Elias–Zacarias*, 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992) (quotation marks omitted). Under this deferential standard, this court "may not reverse the [BIA's] determination simply because [it] would have decided the matter differently." *Mikhailevitch v. INS*, 146 F.3d 384, 388 (6th Cir.1998). In order for the court to reverse the decision of the BIA, the evidence presented must not only support reversal but also compel it. *Id.* "[T]he petitioners must show that the evidence presented was so compelling that no reasonable factfinder could fail to find the requisite persecution or fear of persecution." *Ouda v. INS*, 324 F.3d 445, 451 (6th Cir.2003).

To prevail on an asylum claim, an alien must satisfy a two-step inquiry: "(1) whether the applicant qualifies as a 'refugee' ..., and (2) whether the applicant 'merits a favorable exercise of discretion by the Attorney General.'" *Mikhailevitch*, 146 F.3d at 389 (quoting *Perkovic v. INS*, 33 F.3d 615, 620 (6th Cir.1994)). A refugee is defined as "any person who is outside any country of such person's nationality ... and who is unable or unwilling to return to ... that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion...." 8 U.S.C. § 1101(a)(42)(A). 8 U.S.C. § 1101(a)(42)(B) specifically states:

For purposes of determinations [of "refugee"], a person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program, shall be deemed to have been persecuted on account of political opinion...."

8 U.S.C. § 1101(a)(42); *see also In re C–Y–Z–*, 21 I. & N. Dec. 915, 918–20 (BIA 1997) (The "forced sterilization of one spouse on account of a ground protected under the Act is an act of persecution against the other spouse, [and] the applicant has established past persecution.").

■ "An applicant for asylum bears the burden of establishing that he or she qualifies as a refugee 'either because he has suffered actual past persecution or because he has a well-founded fear of future persecution.'" *Mikhailevitch*, 146 F.3d at 389 (quoting 8 C.F.R. § 208.13(a)-(b)). The testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration. 8 C.F.R. § 208.13(a)-(b). If an alien demonstrates that he has suffered past persecution, then he is "presumed to have a well-founded fear of persecution on the basis of the original claim." 8 C.F.R. § 208.13(b)(1). If the alien bases his claim for asylum on the possibility of future persecution, the alien must show that (1) he has fear of future persecution, (2) "[t]here is a reasonable possibility of suffering such persecution if he ... were to return to that country," and (3) he is unable or unwilling to return to his home country because of the fear of such persecution. 8 C.F.R. § 208.13(b)(2)(i)(A)-(C). An alien's burden of proving eligibility for asylum is less than his burden of proving entitlement to withholding.[1] *Mikhailevitch*, 146 F.3d at 391.

---

**1.** To obtain withholding of removal under the

Convention Against Torture, "[t]he burden of

This court has reviewed the record in its entirety and finds substantial evidence to support the adverse credibility determination against Chen and He. Implausible or inconsistent testimony and discrepancies among the alien's asylum application, testimony, and other evidence can support an adverse credibility finding. *See Malek v. INS*, 198 F.3d 1016, 1021 (7th Cir.2000); *Pal v. INS*, 204 F.3d 935, 938 (9th Cir. 2000).

■ The IJ's adverse credibility finding was supported by many inconsistencies between Chen and He's asylum applications and their hearing testimony, as well as internal inconsistencies within their testimony. It is true that minor inconsistencies "need not be fatal to credibility." *Diallo v. INS*, 232 F.3d 279, 288 (2d Cir. 2000); *see also Akinmade v. INS*, 196 F.3d 951, 954 (9th Cir.1999); *de Leon–Barrios v. INS*, 116 F.3d 391, 394 (9th Cir.1997). But despite the petitioners' attempt to cast the inconsistences and omissions in this case as minor, the lack of consistency regarding the threats of imprisonment and property takings goes to the heart of their claim.

The petitioners rely on *Wang v. Ashcroft*, 341 F.3d 1015 (9th Cir.2003), in which the Ninth Circuit reversed the BIA's adverse credibility determination, to demonstrate that their inconsistencies and omissions were minor. In that case, Wang, a native and citizen of China, alleged that she was forced to have two abortions after the birth of her first son. *Wang*, 341 F.3d at 1018. The IJ determined that her story was not credible because of certain inconsistencies surrounding Wang's work hours, the celebration that occurred after she discovered she was pregnant again, her husband's presence at the hospital after the abortion, her husband's memory of the date of Wang's second abortion, and the insertion of an intrauterine device. *Id.* at 1021. However, in *Wang* it was clear that the inconsistencies relied upon by the IJ did not go to the heart of whether Wang was forced to have abortions.

Unlike *Wang*, the petitioners' inconsistencies in this case were not exceptions to a generally consistent and plausible account. Instead, there were numerous inconsistencies, often regarding events at the heart of the claim for relief, throughout Chen and He's testimony. For example, inconsistencies and omissions permeated the petitioners' description of the threats that were made to their families and themselves. These and other inconsistencies and omissions go to the basis of the "coercion" allegedly exerted upon Chen to have an abortion, and not to collateral issues as in *Wang*. While other factfinders may have decided the case differently, it would be difficult to say "that the evidence presented was so compelling that no reasonable factfinder could fail to find the requisite persecution...." *Ouda*, 324 F.3d at 451. Thus, the BIA had substantial evidence to find that Chen and He's claims were not credible.

■ Chen and He also challenge the IJ's decision to exclude extensive testimony regarding their religious beliefs. After an offer of proof, the IJ determined that he would not allow testimony on the sub-

proof is on the applicant ... to establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2). This circuit will uphold the BIA's ruling under the Convention Against Torture unless it is "manifestly contrary to the law." *Castella-*

*no–Chacon, v. INS*, 341 F.3d 533, 552 (6th Cir.2003). As the IJ decided the petitioners' testimony was not credible, the petitioners do not meet the standards required for relief under the Convention Against Torture. *Yu v. Ashcroft*, 364 F.3d 700, 703 (6th Cir.2004).

ject because it was self-serving, uncorroborated, and speculative. That denial did not cause the hearing to be unfair.

The petitioners allege that the IJ's decision was flawed because it is well-settled that aliens could become refugees based on events occurring after the alien arrived in the United States.[2] The United Nations's High Commissioner's *Handbook on Procedures Criteria for Determining Refugee Status Under the 1951 Convention and the 1967 Protocol Relating to the Status of Refugees* ¶ 94 (Geneva 1992) states that "the requirement that a person must be outside his country to be a refugee does not mean ... that he must have left [his home country] on account of well-founded fear." In a few cases, aliens have been granted asylum based on events that happened after they left their home country. In *Matter of Mogharrabi*, 19 I. & N. Dec. 439, 1987 WL 108943 (BIA 1987), an Iranian alien, while in the United States, was involved in an altercation with an employee of the pro-Ayatollah Iranian embassy and also participated in anti-Ayatollah demonstrations in the United States. *Moharrabi*, 19 I. & N. Dec. at 447–48. Although these events occurred after the alien left Iran, the BIA determined he was a refugee and was granted asylum. *Id.* at 448–49. In *Mogharrabi*, the BIA found that the alien's testimony regarding the altercation was credible. *Id.* at 448.

The IJ in this case, however, did not reject the very possibility of becoming a refugee based on post-arrival events. On the contrary, the IJ's primary concern in not allowing testimony regarding the petitioners' religious beliefs was the speculative nature of this testimony. *See* JA 100

("I mean you really can't ... look into people's heads as far as knowing what's inside someone's mind."); *id.* ("[I]t seems kind of maybe stretching I mean especially without any documentation from a church ...."); *id.* at 101 ("I mean it seems to be ... conjectural."); *id.* at 107 ("[I]t's a big leap from that kind of proffer to determining that they, in fact, would be engaged in religious activities that were [sic] controvert government policies if they went back to China.").

The IJ in the present case found that Chen and He could not satisfy their burden because they could not present any corroboration of their claim or evidence that they would be persecuted for proselytizing and attending a church not sanctioned by the Chinese government. Mr. He admitted that he attended one of the non-sanctioned churches before he left China and that he had never been persecuted because of his attendance. In support of their claim, the petitioners presented the IJ with a 1999 letter from the pastor of their church in the United States stating that Chen and He were members of his church, along with two articles describing the persecution of Christians by the Chinese government. None of this evidence provides any proof that the petitioners would be singled out for persecution because of their religion. *See Yousif v. INS*, 794 F.2d 236, 244 (6th Cir.1986) (After examining self-serving statements and general articles regarding the unrest in Iraq, the court decided that "it is clear that [the petitioner] has failed to present credible evidence to support his claim that he is being singled out for persecution, and

---

**2.** Such refugees have been called "sur place" refugees. The Northern District of California has defined a "sur place" refugee as "a person who was not a refugee at the time she left her country, but became a refugee later due to events occurring after she arrived in the

United States." *Azarshahy v. Ilchert*, No. C 93–03978 CW, 1994 WL 446040, at *5 (N.D.Cal. Aug. 10, 1994) (holding that the alien's claim for asylum was not frivolous and that work authorization should be granted pending the asylum application).

he has failed to demonstrate that his fear of being persecuted as a Chaldean Christian is well-founded.").

■ The petitioners also allege that the IJ denied Chen and He their fundamental due process rights by refusing to allow them to testify as to their religion because it was "self-serving," and that the self-serving nature of the claim should go to the weight not the admissibility of the evidence. This claim is made very briefly and is not supported by any statute or case law.

"In the context of political asylum, due process requires, among other things, that an applicant receive a meaningful opportunity to be heard." *Kerciku v. INS*, 314 F.3d 913, 917 (7th Cir.2003); *see also* 8 U.S.C. 1229a(b)(4)(B) ("[T]he alien shall have a reasonable opportunity . . . to present evidence on the alien's own behalf"). The Sixth Circuit "reviews *de novo* an alleged due-process violation based upon the manner in which an IJ conducts a [removal] hearing." *Mikhailevitch*, 146 F.3d at 391.

To prove a violation of due process in this context, the alien must show that he was denied a full and fair hearing, taking into account the IJ's broad discretion in conducting the hearing. *Castellano–Chacon, v. INS*, 341 F.3d 533, 553 (6th Cir. 2003); *Roman v. INS*, 233 F.3d 1027, 1032–33 (7th Cir.2000). Our court has noted that "[t]he IJ is afforded broad discretion to control the manner of interrogation in order to ascertain the truth." *Mikhailevitch*, 146 F.3d at 391–92 (internal quotation marks omitted) (holding that the IJ did not deprive the alien of a fair trial by redirecting the alien's testimony to his own story and away from irrelevant family history); *see also Kerciku*, 314 F.3d at 918 (due process is not violated when the IJ attempts to "focus the proceedings and exclude irrelevant evidence"); *Morales v.*

*INS*, 208 F.3d 323, 327 (1st Cir.2000) (finding no merit in the allegation that the IJ " 'cut short' Morales' direct examination, cross-examination and redirect examination, and precluded him from addressing fundamental elements of his claim for asylum").

Furthermore, before deciding to exclude further testimony on the petitioners' religion, the IJ accepted the offer of proof by the petitioners' attorney and then determined that it was not corroborated. This is remarkably similar to what the Federal Rules of Evidence prescribe. *See* FED. R.EVID. 103, 403. For the above reasons, the BIA did not err in affirming the IJ's decision not to hear extensive testimony on Chen and He's religious beliefs.

■ Finally, the petitioners argue that the BIA's affirmance without opinion of the IJ's decision under 8 C.F.R. § 1003.1(a)(7) was improper because there were substantial legal and factual issues presented. However, the IJ did not err in his determination with regard to the petitioners' substantive claims, any procedural errors were harmless or non-material, and any questions were not substantial enough for full BIA review. *See Denko*, 351 F.3d at 731–32 (upholding the general constitutionality of BIA summary affirmances).

Accordingly, the petitioners' petition for judicial review of the BIA's decision is denied.