06-2959-ag
Xia v. Mukasey

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term, 2006

(Argued: April 24, 2007        Decided: December 7, 2007)

Docket No. 06-2959-ag

- - - - - - - - - - - - - - - - - - - -x

XIU FEN XIA,

                    Petitioner,

            -v.-

MICHAEL MUKASEY, Attorney General,[*]

                    Respondent.

- - - - - - - - - - - - - - - - - - - -x

    Before:        JACOBS, <u>Chief Judge</u>, KEARSE and POOLER,
                    <u>Circuit Judges</u>.

    Petition for review of a final decision and order of

removal of the Board of Immigration Appeals affirming in

part an immigration judge's denial of an application for

asylum, withholding of removal, and relief under the

_____

        [*] Pursuant to Federal Rule of Appellate Procedure
43(c)(2), Attorney General Michael Mukasey is automatically
substituted for former Attorney General Alberto Gonzales as
a respondent in this case.

Convention Against Torture.

Petition denied.

JOSHUA BARDAVID, Law Office of Joshua Bardavid, New York, New York (Peter D. Lobel, New York, New York, on the brief), for Petitioner.

NICOLE N. MURLEY, United States Department of Justice, Office of Immigration Litigation, Washington, D.C. (Judy K. Hunt and David P. Rhodes, Assistant United States Attorneys, for Paul I. Perez, United States Attorney for the Middle District of Florida, Tampa, Florida, on the brief), for Respondent.

DENNIS JACOBS, Chief Judge:

Petitioner Xiu Fen Xia, a native and citizen of China, seeks review of a May 25, 2006 order of the Board of Immigration Appeals ("BIA") affirming in part the December 7, 2004 decision of the Immigration Judge denying Xia's applications for asylum, withholding of removal pursuant to 8 U.S.C. § 1231(b)(3), and withholding of removal pursuant to the Convention Against Torture ("CAT"). In re Xia, No. A98 228 356 (B.I.A. May 25, 2006), aff'g No. A98 228 356 (Immig. Ct. N.Y. City Dec. 7, 2004). Xia claims that she arranged to have an abortion in order to avoid adverse consequences, possibly including the harsh treatment and

substandard medical conditions attributed to an abortion or sterilization at the hands of Chinese government cadres; that she was thus subjected to a forced abortion under China's family-planning policy; and that she is therefore a "refugee" as that term is defined in 8 U.S.C. § 1101(a)(42).

The BIA concluded that her abortion was not "forced" within the meaning of § 1101(a)(42) because "the Chinese government was completely unaware of her pregnancy and did not know that she had an abortion." In re Xia, No. A98 228 356, at 2 (B.I.A. May 25, 2006). We agree; and therefore we deny the petition. "An abortion is not 'forced' within the meaning of the refugee definition . . . unless the threatened harm for refusal would, if carried out, be sufficiently severe that it amounts to persecution." In re T-Z-, 24 I. & N. Dec. 163, 169 (B.I.A. 2007). Because no government official was aware of Xia's pregnancy, she has not sufficiently established a threatened harm, let alone a threatened harm so severe as to rise to the level of persecution.

I

Xia is a 32-year-old woman from Wenzhou City, Zhejiang

3

Province, China.  In 2003 Xia arrived in the United States; and in 2004 she applied for asylum, withholding of removal, and relief under the CAT.  One month later the government instituted removal proceedings against her.

At a hearing on December 7, 2004, Xia testified as follows: she and her husband were married in 1995; she gave birth to a child in 1997 and was fined 5,000 RMB because the marriage had not been registered at the time she gave birth; the Chinese government forced her to use an IUD in 1998; she was required to receive "checkups" three times a year to ensure that the IUD was in place and that she was not pregnant; she became pregnant before her October 2000 checkup; her resulting dilemma was that if she skipped the October checkup, she would have been arrested, but if she attended the checkup, officials would have discovered the pregnancy.

Xia testified that if officials discovered her pregnancy she could be subject to the following punishments: "I would get sterilized right away"; "I would pay a really heavy fine"; "they will take me forcibly for an abortion"; "they are going to arrest my famil[y] members"; and the "Government will come to arrest me."  Therefore (she says)

4

she decided to obtain an abortion, even though she "really [didn't] want to have [it]." Xia also testified, however, that she obtained the abortion because: "If we have this child[,] when it grows up where is the baby going to stay[?]"

Before the scheduled October checkup, Xia went to a private hospital and aborted her pregnancy; the government did not know of her pregnancy or the abortion.

## II

The IJ denied Xia's applications on the alternate grounds that Xia was not credible and that (even if she were credible) her testimony established that the termination of her pregnancy was voluntary rather than forced. In re Xia, No. A98 228 356, at 12-13 (Immig. Ct. N.Y. City Dec. 7, 2004). The BIA did not affirm the IJ's adverse credibility finding, In re Xia, No. A98 228 356, at 1 (B.I.A. May 25, 2006), but agreed with the IJ that Xia "did not establish her eligibility for asylum, withholding of removal and protection under the [CAT] . . . [because] she chose to undergo an abortion by a private doctor . . . [and] the Chinese government was completely unaware of her pregnancy

and did not know that she had an abortion," id. at 1-2. Xia's petition for review argues that she is eligible for asylum because the circumstances of her abortion "meet the definition of 'forced' within the meaning of 8 U.S.C. § 1101(a)(42)(B) . . . [and] fit[] perfectly within the ordinary meaning of the word 'force.'"[1]  She does not meaningfully challenge the BIA's decision with respect to her applications for withholding of removal or relief under the CAT.

We review the BIA's factual findings under the substantial evidence standard and treat them as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."  8 U.S.C. § 1252(b)(4)(B).  The BIA's application of law to fact is reviewed de novo.  See Yi Long Yang v. Gonzales, 478 F.3d 133, 141 (2d Cir. 2007); see also Jin Shui Qiu v. Ashcroft, 329 F.3d 140, 149 (2d Cir. 2003).

---

[1] Xia also argues that she "suffered past persecution and has a well founded fear of future persecution when she had an IUD forcibly inserted."  But this point was not raised before the BIA, so we do not address it here.  See Lin Zhong v. U.S. Dep't of Justice, 480 F.3d 104 (2d Cir. 2007).

Under the Immigration and Nationality Act ("INA"), a petitioner is eligible for asylum if she suffered past persecution or has a well-founded fear of future persecution on account of a statutorily-defined protected ground. See 8 U.S.C. § 1101(a)(42); see also Jin Shui Qiu, 329 F.3d at 148. The INA was amended in 1996 to provide that "a person who has been forced to abort a pregnancy . . . or who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program shall be deemed to have been persecuted on account of political opinion." 8 U.S.C. § 1101(a)(42).

The INA does not define "forced," and the term affords latitude for interpretation. In such circumstances, "[w]e defer to the BIA's reasonable constructions of the immigration laws." Kyaw Zwar Tun v. INS, 445 F.3d 554, 562 (2d Cir. 2006); see also Jian Hui Shao v. BIA, 465 F.3d 497, 502 (2d Cir. 2006) ("[T]he BIA is entitled to deference when it interprets the [INA]."). When this appeal was heard, the BIA had yet to issue a construction (reasonable or otherwise) of the term "forced." However, two weeks after oral argument the BIA decided In re T-Z-, which undertook to

"derive the meaning of a 'forced' abortion."  24 I. & N. Dec. at 167.  Both parties contend that In re T-Z- supports their positions; neither argues that In re T-Z- is unreasonable and therefore undeserving of Chevron deference.  Accordingly, we have no occasion to decide whether such deference is due.

In re T-Z- concluded that:

> the question whether an abortion is "forced" within the meaning of [§ 1101(a)(42)] should be evaluated in terms of whether the applicant would have otherwise been subjected to harm of sufficient severity that it amounts to persecution.  Therefore, an abortion is "forced" . . . when a reasonable person would objectively view the threats for refusing the abortion to be genuine, and the threatened harm, if carried out, would rise to the level of persecution.
>
> . . . .
>
> . . . Persecutory force . . . is force which, if carried out, would meet or exceed the level of harm require to demonstrate persecution.  The term "persecution" is not limited to physical harm or threats of physical harm and may include threats of economic harm, so long as the threats, if carried out, would be of sufficient severity that they amount to past persecution.  Not all threats of fines, wage reduction, or loss of employment, however, will suffice to indicate that submission to an abortion was "forced" . . . .
>
> . . . .
>
> . . . The statute requires that the abortion be "forced," not merely that a person choose an

> unpreferred course of action as the result of some pressure that sways the choice. The mere fact of submission to pressure only tells us that the particular person's preference was altered. It is insufficient, by itself, to tell us the level of that pressure or whether it reasonably can be equated to "force."

24 I. & N. Dec. at 168-70.

## IV

We agree with the BIA's conclusion that Xia's abortion was not forced. Xia concedes that the Chinese government was unaware of her pregnancy. Therefore, Xia's list of potential punishments (sterilization, fine, arrest, forced abortion, or arrest of family members) is not a list of harms that were threatened; rather, it is a list of worries about what punishment Xia might have faced had government officials eventually learned of her pregnancy. But based on Xia's decision to terminate her pregnancy, these contingencies never developed in fact or as threat.[2]

The distinction drawn by In re T-Z- between "submission to pressure" and "force," 24 I. & N. Dec. at 169-70,

---

[2] Nor has Xia established the existence of a universal law or custom or practice having the force of law ensuring that she would have suffered a forced abortion or sterilization.

9

requires evidence as to the pressure actually exerted on a particular petitioner. Xia cannot establish that she faced a threat that amounted to persecution without the threshold showing that a palpable threat existed. For example, Xia claims that she or members of her family might have been arrested had she not undergone the abortion; but because this risk of arrest was hypothetical, Xia cannot establish that the circumstances surrounding the arrest would have risen to the level of persecution. See, e.g., Beskovic v. Gonzales, 467 F.3d 223, 226 & n.3 (2d Cir. 2006) (stating that detention without physical abuse does not always constitute persecution and requiring a "case-by-case" inquiry). Similarly, she cannot establish that she risked "anything more than modest fees or fines," which also would not rise to the level of persecution. Jian Xing Huang v. INS, 421 F.3d 125, 127, 129 (2d Cir. 2005) (per curiam).

Xia contends that the threatened harms are not speculative, because government officials would have certainly discovered her pregnancy at the October checkup. This argument fails. However, even if it were certain that Xia would face some punishment following the October checkup, speculation as to what that punishment might have

10

been cannot establish that the threatened harm would have risen to the level of persecution. Not all punishment is persecution. See, e.g., Beskovic, 467 F.3d at 226. Because Xia provided no evidence regarding the risks associated with an arrest of uncertain duration, let alone the risk of sterilization or forced abortion, she did not establish a threat of persecution. See id.

We recognized before In re T-Z- that an "essential" element of force is "that the agents of coercion were government birth control officials." Jin Shui Qiu, 329 F.3d at 151; see also id. ("A forced sterilization . . . can be effected by one arresting official or ten; with an arrest in the morning or the evening, in the rain or in the sunshine; with a detention for no longer than the time it takes to perform the surgery, or a detention for a term of years . . . ."); cf. Lau May Sui v. Ashcroft, 395 F.3d 863, 871 (8th Cir. 2005) (reading "force" to require "that Chinese officials used some sort of physical force or undue pressure with the intent to cause, and which did cause, the particular abortion in question," and concluding that the petitioner did not establish force where "it is undisputed that no Chinese official knew at the time that [the

11

petitioner] was pregnant"). Here, the record is clear that no government official was aware of Xia's pregnancy or her abortion; therefore no government official forced Xia to terminate her pregnancy.

Xia relies on two Ninth Circuit cases: Ding v. Ashcroft, 387 F.3d 1131 (9th Cir. 2004), and Wang v. Ashcroft, 341 F.3d 1015, 1020 (9th Cir. 2003). However, the BIA has expressly "disagree[d] with . . . the decisions in Ding and Wang to the extent that they suggest that threats of economic harm that do not rise to the level of persecution, if carried out, would suffice to demonstrate that an abortion was 'forced' within the meaning of the statute." In re T-Z-, 24 I. & N. Dec. at 169. And even in Ding and Wang, government officials were actually aware of the petitioner's pregnancy and took direct measures targeted against the petitioner to compel her to undergo an abortion. See Ding, 387 F.3d at 1139 (holding that abortion was forced when government officials forced the petitioner "into a van, to a hospital, into a room, and onto a surgical table for the abortion" before the petitioner submitted); Wang, 341 F.3d at 1020 (9th Cir. 2003) (holding that abortion was forced when government officials "harassed [the petitioner]

12

by either deducting her wages, threatening her job stability, or threatening to impose unreasonably high fines" until the petitioner "submitted to the pressure").

**V**

Xia's supplemental brief concedes that [i] the record "is . . . largely deficient" as to Xia's financial situation and her ability to pay a fine, and [ii] the record "is significantly devoid of any discussion regarding what, if any, economic deprivation Ms. Xia feared." Accordingly, Xia requests a "remand for further fact-finding" so that she can adduce additional evidence of her fear.

Xia's request must be denied. We cannot order the BIA to reopen the record for the taking of additional evidence where, as here, "the agency regulations set forth procedures to reopen." Xiao Xing Ni v. Gonzales, 494 F.3d 260, 269 (2d Cir. 2007). The appropriate avenue for such relief would be to file a motion to reopen in the agency. See 8 C.F.R. § 1003.2(c). In any event, Xia already has had a reasonable opportunity to present the evidence she now seeks to add to the record. Even before In re T-Z-, the seriousness of a potential fine and the effect of such a fine were held to

13

have bearing on the question of persecution.  See Ivanishvili v. U.S. Dep't of Justice, 433 F.3d 332, 341 (2d Cir. 2006).  She therefore had an incentive to present evidence of the economic hardship she would face; and she offers no explanation for why she did not, or why she should be allowed to do so now when she did not do so then.

Xia's request for a remand to supplement the record raises a collateral issue that should be (briefly) addressed.  The BIA did not apply In re T-Z- in Xia's case because the decision had not yet issued.  The Supreme Court has instructed that "a court reviewing an agency decision following an intervening change of policy by the agency should remand to permit the agency to decide in the first instance whether giving the change retrospective effect will best effectuate the policies underlying the agency's governing act."  NLRB v. Food Store Employees Union, 417 U.S. 1, 10 n.10 (1974).  But the Court's instruction does not compel a remand here.

First, neither party has requested a remand for the purpose of determining whether In re T-Z- should be applied to Xia retrospectively.  Both Xia and the government agree that In re T-Z- governs Xia's petition; and even Xia's

14

request for the taking of additional evidence presupposes that the evidence would be relevant to meet the standard set out in In re T-Z-. She does not argue that it would be unfair to apply In re T-Z- or that In re T-Z- would result in a different or unfavorable outcome.

Second, and more fundamentally, neither party contends that In re T-Z- represents a "change of policy" by the BIA. Rather, In re T-Z- amounts to a formal articulation of the standard that was actually applied in the BIA's resolution of Xia's case. If, as here, the BIA's initial unpublished decision was proper and supported by substantial evidence, then a subsequent precedential BIA decision that validates the agency's initial reasoning does not constitute a "change of policy"--and Food Store Employees therefore does not justify a remand.

Our refusal to remand in this case does not leave future petitioners defenseless against the application of strict new standards set forth in intervening decisions, or deprive them of the benefit of new more favorable decisions. If such decisions are truly new, then petitioners can seek remand under Food Store Employees so that the BIA can determine in the first instance if the new rule should be

15

applied to the petitioner's case.  Or, if the rule represents an irrational departure from prior decisions, it is possible that the rule itself would be "overturned as arbitrary, capricious, or an abuse of discretion."  INS v. Yueh-Shaio Yang, 519 U.S. 26, 32 (1996) (internal quotation marks and emendations omitted).  But there is no need to remand where, as here: [i] the BIA's decision is supported by substantial evidence; [ii] no valid challenge is raised against Chevron deference; [iii] the intervening decision supports and validates the reasoning of the decision under review; and [iv] the intervening decision does not amount to a pivot in agency policy.

                         *    *    *

    For the reasons set forth above, the petition is hereby denied.  Having completed our review, this Court's previous order granting a motion for stay of removal is vacated, and the motion for a stay of removal is dismissed as moot.